IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LUIS TORRES | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 16-2441 |
| NANCY BERRYHILL[1] | : | |

**MEMORANDUM**

**SURRICK, J.**                                                                         **AUGUST 23, 2019**

Presently before the Court is an action brought by Plaintiff Luis Torres under 42 U.S.C. § 405(g), seeking review of the decision of the Commissioner of Social Security ("Commissioner"), denying Plaintiff's claim for disability insurance benefits. For the following reasons, we will approve and adopt the Report and Recommendation ("R&R") of United States Magistrate Judge David R. Strawbridge (ECF No. 20), overrule Plaintiff's Objections (ECF No. 21), and deny Plaintiff's request for review.

**I.   BACKGROUND[2]**

Plaintiff is currently a 44-year old male. (R. 86.)[3] He has a GED and has previously worked as a forklift operator, machine operator, sanitation employee, and landscaper. (R. 86, 89-90, 249-250.) Plaintiff filed an initial claim of disability sometime prior to May 11, 2012, in which he alleged a disability onset date of August 31, 2009. (R. 29-76.) The claim was denied

---

[1] On January 23, 2017, Carolyn W. Colvin was succeeded by Nancy A. Berryhill as the Acting Commissioner of the Social Security Administration.

[2] The background of this case is set forth in detail in Magistrate Judge Strawbridge's R&R and will be recited in this Memorandum only as necessary to address Plaintiff's objections.

[3] Citations to the administrative record are designed by an "R." followed by the page number. The administrative record in this case exceeds 1000 pages.

and, on August 13, 2012, an Administrative Law Judge ("ALJ") affirmed the Commissioner's denial. (R. 123-42.) There is no evidence that Plaintiff appealed that decision.

Plaintiff filed a second application for disability insurance benefits and supplemental security income on October 11, 2012, alleging a disability onset date of August 14, 2012, the day after the ALJ affirmed the Commissioner's decision in the first filing. (R. 154, 214.)[4] The claims were based on the following conditions: depression; anxiety; back, leg, hand, wrist, and shoulder pain; back injury; diabetes; dislocated shoulder; knee problems; and panic attacks. (R. 248.) On January 31, 2013, and February 22, 2013, respectively, the claims were denied. (R. 154-55.) On March 25, 2013, Plaintiff filed a request for a hearing. (R. 168-70.) The ALJ held a hearing on August 12, 2014. (R. 77-122.) On December 5, 2014, the ALJ issued a decision finding that Plaintiff was not disabled. (R. 9-28.) That same day, Plaintiff filed an appeal of the ALJ's decision. (R. 1, 7-8.) On March 26, 2016, Plaintiff's request for review was denied. (R. 1-3.)

On May 26, 2016, Plaintiff filed a Complaint in this Court against the Acting Commissioner of the Social Security Administration. (ECF No. 3.) On April 27, 2018, Magistrate Judge David Strawbridge issued an R&R recommending denial of Plaintiff's request for review. (R&R, ECF No. 20.) Plaintiff filed Objections to the R&R on May 14, 2018. (Pl.'s Objs., ECF No. 21.) On May 21, 2018, Defendant filed a Response to Plaintiff's Objections. (Def.'s Resp. to Pl.'s Objs., ECF No. 23.)

---

[4] Plaintiff clarified that he stated his injury onset date was August 14, 2012, solely so that the second filing for disability benefits would not be denied pursuant to the doctrine of claim preclusion/*res judicata.* (Pl.'s Reply in Support of Request for Review 6, ECF No 18.) The date does not have any medical significance. (*Id.*)

## II. LEGAL STANDARD

When a plaintiff makes a timely and specific objection to a portion of a R&R, the district court must engage in *de novo* review of the issues raised on objection. 28 U.S.C. § 636(b). In so doing, the court may "accept, reject, or modify, in whole or in part, the findings or recommendations" contained in the report. *Id.* The court may also, in the exercise of sound judicial discretion, rely on the magistrate judge's proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676 (1980).

Review of an ALJ's findings of fact is limited to determining whether or not substantial evidence exists in the record to support the Commissioner's decision. *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). "The Court is bound by the ALJ's findings of fact if they are supported by substantial evidence in the record." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). "Substantial evidence does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (internal quotation marks and citation omitted).

## III. DISCUSSION

In Plaintiff's Request for Review, he raised five issues. First, Plaintiff argued that the ALJ did not adequately explain his finding at Step Three that Plaintiff's mental impairments, singly or in combination, do not meet or equal any of the medical listings.[5] Plaintiff also argued,

---

[5] An ALJ uses a five-step sequential evaluation process to determine whether an applicant is disabled under the Social Security Act, 42 U.S.C. §§ 401-434. The ALJ determines whether the claimant:
    (1) is engaged in substantial gainful activity;
    (2) suffers from an impairment or combination of impairments that is severe;
    (3) suffers from an impairment or combination of impairments that meets or equals a listed impairment;
    (4) is able to perform his or her past relevant work; and

3

on four different grounds, that the ALJ's finding at Step Four, regarding Plaintiff's residual functional capacity, was not supported by substantial evidence. Plaintiff now raises specific Objections to the Magistrate Judge's determination that the ALJ did not err with respect to each of the issues raised in his Request for Review. We will address each Objection separately.

Initially, we note that we are tasked with reviewing *de novo* only those portions of the R&R that have been specifically objected to by a claimant. 8 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). Courts in this circuit have held that if a plaintiff's objections to the R&R simply rehash arguments that he or she previously made in the request for review, then *de novo* review by the district court is not required. *See Gain v. Colvin*, No. 12-5964, 2013 WL 6330658, at *2-4 (E.D. Pa. Dec. 5, 2013) (declining to review objections that claimant made to R&R because "objecting party must identify specific errors in the magistrate judge's analysis without simply rehashing arguments already raised to the magistrate judge"); *Martinez v. Astrue*, No. 10-5863, 2011 WL 4974445, at *3-4 (E.D. Pa. Oct. 19, 2011) (citing cases, and stating that "[r]epeatedly, courts, both within and outside of the Third Circuit, have held that objections which merely rehash arguments presented to and considered by a magistrate judge are not entitled to *de novo* review"); *Palmer v. Astrue*, No. 09-820, 2010 WL 1254266, at *6 (E.D. Pa. Mar. 31, 2010) ("Addressing those objections [already made to the Magistrate Judge] *de novo* would compromise the judicial efficiency gained from the report and recommendation process.").

A.  **First Objection: Step Three Listing of Impairments**

Plaintiff contends that the Magistrate Judge erred with respect to the ALJ's finding as to whether his mental impairments meet or equal an impairment listed in Step Three. Specifically,

---

(5) is able to perform work existing in significant numbers in the national economy. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (citing 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f)). The ALJ provided more detail about the five-step sequential process in his decision. (R. 13-14.)

4

he argues that the facts cited by the ALJ in support of his finding do not fairly represent the evidence on which the finding is based, and that the facts cited by the ALJ do not support his conclusion in any event. We are satisfied that the ALJ's reasoning at Step Three was adequate.

At Step Three, the ALJ was tasked with determining whether Plaintiff's "impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Part P, Appendix 1." (R. 13 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926).)[6] The ALJ concluded that Plaintiff "does not have an impairment that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. 15 (citations omitted).) In particular, the ALJ concluded that Plaintiff did not satisfy the "Paragraph B" criteria of Listings 12.02, 12.04, 12.06, 12.08, or 12.09, all of which require that the mental impairments result in at least two of the following:

> marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme.

(*Id.*) Plaintiff objects to the ALJ's conclusion that he has only moderate restrictions, and not the required marked restrictions, in activities of daily living, social functioning, and concentration, persistence, and pace.

The ALJ's conclusion that Plaintiff does not suffer marked restrictions in activities of daily living, social functioning, or concentration, persistence, and pace as a result of his mental

---

[6] The ALJ concluded that Plaintiff has the following severe impairments: "osteoarthritis; backache NOS; osteoarthritis of the right shoulder; L4-5 disc bulge and annular tear; lumbar facet disease; mixed sleep disorder; major depressive disorder; generalized anxiety disorder; depression; anxiety; mood disorder; panic disorder with agoraphobia; post-traumatic stress disorder; personality disorder; alcohol dependence in remission; and drug abuse, continuous." (R. 14.)

5

impairments is supported by substantial evidence in the administrative record. "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with [a claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." *Ramos v. Barnhart*, 513 F. Supp. 2d 249, 258 n.8 (E.D. Pa. 2007) (quoting 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C)). The ALJ stated that he considered the opinion of a state agency medical consultant who evaluated these issues specifically, and found that Plaintiff had only moderate restrictions. (R. 15, 147-48.) The ALJ also relied on Plaintiff's statements regarding his daily activities and level of functioning detailed in his Function Report and testimony from his August 12, 2014 hearing. (R. 15-16.) With regard to activities of daily living and social functioning, the ALJ noted that the evidence shows that Plaintiff lives with his girlfriend and their four children; does not report any problems with dressing, bathing, feeding himself, or using the toilet; prepares very simple meals; shops in stores for personal items; spends time with others talking once per week; drives; and attends doctor's appointments twice per week. (*Id.*; R. 283-95.) The ALJ also referred to Plaintiff's doctors' notes, which consistently stated that his self-care skills were intact; his behavior was generally appropriate; and he was cooperative, calm, relaxed, alert, oriented, and coherent. (R. 16; *see, e.g.*, R. 351, 424, 426, 428, 458, 1023-1037.)

With regard to concentration, persistence, and pace, the ALJ noted that the evidence shows that Plaintiff has a number of restrictions, including that he needs reminders to take care of personal needs and take his medicine; has problems paying bills; is not good at handling money; and has problems paying attention for more than five minutes and following instructions. (R. 16, 283-95.) The ALJ then noted that Plaintiff is able to prepare simple meals, count change, drive, and go to the store. (*Id.*) Finally, the evidence shows, and the ALJ recounted, that

6

Plaintiff's doctors' notes consistently show that he was alert, oriented, coherent, and his memory was intact. (R. 16; *see, e.g.*, R. 351, 424, 426, 428, 458, 1023-1037.)

Plaintiff argues that the ALJ improperly cherry-picked the record to support his conclusion, rather than taking into account other facts that show he has marked limitations. Specifically, he argues that the ALJ did not mention that Plaintiff also reported problems caring for hair and shaving; needs reminders to take care of personal needs, groom himself, and take medications; no longer cooks because he burns food and forgets that the stove is on; is not able to pay bills, handle a savings account, or use a checkbook; has no hobbies or interests; and needs to be accompanied when going to appointments. (R. 283-95.)

We agree with the Magistrate Judge that the ALJ did not misrepresent the record when describing Torres' activities. The Magistrate Judge also found that it was not improper for the ALJ to fail to discuss whether Plaintiff's physical impairments, in combination with his mental impairments, result in such restrictions of functioning that they "equal" one of the listed impairments. The Magistrate Judge found that Plaintiff had not provided any medical source that discussed the combination of impairments, nor did he state which listing he felt he would meet. Plaintiff objects to this on the ground that the Magistrate Judge's role is to assess whether the ALJ's reasoning is supported by substantial evidence, and not to assess whether Plaintiff has put forth enough evidence to support their reasoning.

We are satisfied that the ALJ adequately assessed whether Plaintiff's impairments, in combination, meet a listed impairment. The ALJ expressly stated that Plaintiff "does not have an impairment *or combination of impairments* that meets or medically equals the severity of one of the listed impairments." (R. 15 (emphasis added).) The ALJ then cited to evidence from Plaintiff's Function Report and testimony, which discussed the effect that Plaintiff's impairments, as a whole, have on his life. The ALJ also cited to doctors' notes from Plaintiff's

7

mental health and non-mental health physicians to show that Plaintiff's functioning is not markedly restricted. Therefore, although the ALJ's discussion focused on whether Plaintiff met various listed mental impairments, his conclusion was supported by evidence that applies to both physical and mental impairments, and addresses them in combination.

Plaintiff also argues that he can do all of the things the ALJ mentioned and still have marked restrictions. Plaintiff's statement is true, but fails to acknowledge that the ALJ also relied on the independent opinion of a state agency medical consultant who reviewed Plaintiff's file and came to the same conclusion. (R. 15, 143-153.) The ALJ considered all of the evidence—not just Plaintiff's Function Report—and concluded that the administrative record supported a finding of moderate, but not marked, limitations. *See, e.g.*, *Pettway v. Colvin*, No. 14-6334, 2016 WL 5939159, at *7 (E.D. Pa. Apr. 8, 2016) (affirming ALJ's decision, although based on facts that could have supported finding of marked or less-than marked restrictions, when it was based on reports of state medical consultants that supported finding of marked restriction).

The ALJ's finding is supported by substantial evidence. We are not permitted to re-weigh that evidence. *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) (noting that when reviewing a commissioner's findings for substantial evidence, "[c]ourts are not permitted to re-weigh the evidence or impose their own factual determinations"). Accordingly, Plaintiff's first Objection will be overruled.

### B. Second Through Fifth Objections: Step Four Residual Functional Capacity Determination

Plaintiff raised objections to the Magistrate Judge's conclusion that the ALJ's finding at Step Four[7]—that Plaintiff has the residual functional capacity to perform light work—was supported by substantial evidence. Specifically, he argues that the ALJ: (1) improperly dismissed medical opinion evidence from a treating physician, (2) did not adequately explain why he failed to fully credit Plaintiff's testimony, (3) failed to discuss Plaintiff's low Global Assessment of Functioning ("GAF") scores, and (4) failed to discuss statements about Plaintiff's functioning by Plaintiff's live-in girlfriend.

*1. Second Objection: Rejection of Evidence from Treating Physician*

Plaintiff objects to the ALJ's rejection of a functionality report completed by one of Plaintiff's mental health treatment physicians.

In July of 2014, one of Plaintiff's mental health treatment physicians, Dr. Lazaro Pepen, completed an assessment of Plaintiff's limitations due to his mental health disorders. (R. 1074-76.) Dr. Pepen noted that Plaintiff had "marked" to "extreme" limitations in most areas of normal functioning, such as judgment, memory, understanding, ability to carry out simple instructions, interacting with others, maintaining attention, awareness of hazards, behaving in an emotionally stable manner, and demonstrating reliability. (*Id.*) The ALJ stated that he afforded

---

[7] At Step Four of the sequential evaluation process, an ALJ determines the residual functional capacity of the disability benefits claimant. *See* 20 C.F.R. § 404.1520(e). As the ALJ stated in his decision, "[a]n individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments." (R. 13.) In assessing residual functional capacity, the ALJ must consider all of the relevant medical and other evidence in the administrative record in order to determine the claimant's ability to meet the physical, mental, sensory and other requirements of work. 20 C.F.R. §§ 404.1545(a)(3)-(4) and 416.945(a)(3)-(4). When assessing mental abilities, the ALJ must look at "the nature and extent" of the mental limitations and restrictions to determine the "residual functional capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545.

9

this report "little weight" because it was "inconsistent with the objective medical findings . . . including mental status examinations showing the claimant has been alert and oriented, cooperative and coherent." (R. 21.) The ALJ also stated that the report was inconsistent for the reasons they had previously discussed, which we interpret to include Plaintiff's activities of daily living and Plaintiff's doctors' notes that consistently show over a period of years that Plaintiff was oriented to person, place, and time; had no serious mental abnormalities; exhibited generally appropriate behavior; had no signs of cognitive difficulty; had a normal attention span and normal speech; had intact judgment and insight; and was "doing well" mentally. (*Id.*; *see e.g.*, R. 458, 460, 473, 764, 821, 923.) The ALJ also noted that the report was inconsistent with the state consultant's assessment of Plaintiff's mental health limitations, which found that Plaintiff had the capacity to perform light work. (R. 21, 143-53.)

Plaintiff contends that the ALJ improperly used his own lay medical judgment in rejecting Dr. Pepen's report and cherry-picked the record to cite only to facts that appear inconsistent with the report.

As to Plaintiff's first argument, the Magistrate Judge found that the ALJ was not expressing an improper lay opinion because recent changes in the regulations explicitly allow an ALJ to consider a medical opinion against the weight of other evidence. *See* 20 C.F.R. §§ 404.1527(b), 416.927(b) (stating that an ALJ must "consider the medical opinions in [the claimant's] case record together with the rest of the relevant evidence [they] receive."). Plaintiff objects to this finding on the ground that, regardless of what the regulations may state, "precedential Third Circuit decisions . . . [that] are not interpretations of Regulations . . . cannot be 'overruled' by changes in Regulations." (Pl.'s Objs. 3-4 (citing, among others, *Gober v. Matthews*, 574 F.2d 772, 777 (3d Cir. 1978) ("While an [ALJ] is free to resolve issues of

credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who testified before him.")).)

We decline to engage in this debate. The ALJ's decision here is consistent with both the new regulations and Third Circuit decisions. The regulations expressly allow an ALJ to weigh medical opinions against the record. *See* 20 C.F.R. 404.1527(c)(2) ("When we do not give the treating source's medical opinion controlling weight, we apply the factors listed in . . . this section in determining the weight to give the medical opinion."). One of the factors ALJs use to assess the weight they give to medical opinions is consistency: "the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion." 20 C.F.R. 404.1527(c)(4). Plaintiff correctly points out that an ALJ may not reject evidence from a treating physician based on their own lay judgment, but "may reject a treating physician's opinion outright only on the basis of contradictory medical evidence." *Plummer*, 186 F.3d at 429. Here, the ALJ afforded Dr. Pepen's report "little weight" in part because it was contradictory to other medical evidence showing that Plaintiff was "alert and oriented, cooperative and coherent." (R. 21.) Moreover, the ALJ noted that the state mental health consultant's opinion supported his conclusion. Therefore, the ALJ's rejection of Dr. Pepen's report was not an impermissible exercise of lay medical judgment, but rather a reliance on other medical opinions.

We note that Plaintiff takes issue with the ALJ's reliance on the state consultant's report to reject the medical report of a treating physician. Specifically, Plaintiff argues that the consultant was a non-examining source and only had the opportunity to review files up to January of 2013. We note that more than half of Plaintiff's mental health records are dated before January of 2013. (*See, e.g.*, R. 452-489, 929-1014 (doctors' notes from Reading Behavioral Center from July 1, 2011 to December 27, 2012).) Moreover, the ALJ acknowledged

11

that the state consultant's review was part of the administrative review process, which ended in January and February of 2013. (R. 15.) Therefore, the state consultant had sufficient information to come to a conclusion and, to the extent that the information was out of date by the time the ALJ issued his decision, the ALJ was aware of that limitation. Lastly, as Magistrate Judge Strawbridge noted, we do not view the ALJ as "using" the consultant's opinion to reject Dr. Pepen's report. Rather, we understand the ALJ to have viewed the record as a whole, including the consultant's report and any limitations inherent in the report, and found that Dr. Pepen's report was inconsistent with the majority of the evidence, while the consultant's report was consistent with it. The ALJ does not appear to have given undue weight to any one piece of evidence.

In addition, the ALJ did not improperly cherry-pick the record, citing only those facts that supported rejection of the report. As Magistrate Judge Strawbridge noted, the ALJ summarized the medical record as a whole and dedicated a substantial amount of his discussion to those facts that support the severity of Plaintiff's symptoms. The ALJ noted that Plaintiff's doctors occasionally stated that Plaintiff appeared anxious; was "weeping and trembling"; had "mild diffuse memory loss with difficulty remembering recent events and periods of confusion about details"; and once appeared disheveled, had poor eye contact, and appeared to be experiencing hallucinations. (R. 19-20; *see, e.g.*, R. 814, 865, 869.) As a result, the ALJ incorporated many mental limitations into his assessment of whether Plaintiff still had the ability to engage in substantial gainful activity. (R. 22.) In Steps Four and Five, the ALJ restricted Plaintiff's hypothetical work options to those that, for example, do not involve interacting with the public, do not involve fast-pace or quota production, do not involve more than simple instructions, and do not involve any hazards. (R. 17, 22.) Therefore, the ALJ did not cherry-pick facts from the record. Quite the opposite—he properly credited much of the record that supported the severity

of Plaintiff's symptoms, although not to the extent described in Dr. Pepen's report. Plaintiff's second Objection will be overruled.

        2.        *Third Objection: Failure to Fully Credit Plaintiff's Testimony*

Plaintiff also objects to the Magistrate Judge's approval of the ALJ's assessment of Plaintiff's credibility. Specifically, Plaintiff argues that the ALJ merely summarized Plaintiff's testimony and then summarized medical findings that the ALJ found inconsistent with Plaintiff's testimony, without explaining why the findings were inconsistent or why he chose one set of facts over the other.

Plaintiff testified, and the ALJ noted, that Plaintiff's physical and mental impairments limit his ability to work. Plaintiff stated that his physical problems cause him pain when walking for more than one block; he can only lift five pounds with his right arm; he has problems with anger, sleeping, getting along with others, and focusing; and he cannot do things for long periods of time. (R. 18, 283-95.) The ALJ acknowledged this testimony and some of the medical record evidence supporting it, including the mental health issues noted above and scans showing problems with Plaintiff's right shoulder and a number of joints. (R. 18, 330, 518, 564-65, 575.) As a result of this evidence, the ALJ incorporated many physical and mental limitations into his assessment of whether Plaintiff had the ability to engage in substantial gainful activity. (R. 22.)

Nevertheless, the ALJ's ultimate conclusion was that Plaintiff is able to perform gainful activity. He found that Plaintiff's statements were "not entirely credible for the reasons explained in this decision," including that the "objective medical findings do not support the degree of symptoms and limitations alleged." (R. 18, 19.) He then recited a number of medical findings that he found inconsistent with Plaintiff's testimony, such as that Plaintiff was alert and oriented; had a normal range of motion; was coherent; able to groom himself; displayed no signs of anxiety; and was in no acute distress. (*Id.*; *see, e.g.*, 351, 439, 879, 912.) The ALJ explained

that the medical findings with regard to Plaintiff's physical impairments were "generally unremarkable," and implied that Plaintiff is able to perform light work despite his mental impairments because the record repeatedly indicated that Plaintiff was alert, oriented, and cooperative. (R. 22.) The ALJ noted that the state mental health consultant supported this opinion. (*Id.*)

Magistrate Judge Strawbridge found that the ALJ did not merely summarize the record. We agree. The ALJ summarized facts that support the existence of some symptoms, recited a series of medical findings that he believed showed that those symptoms are not as severe as alleged, and explained why the latter symptoms did not support a finding that Plaintiff is disabled. Thus, the ALJ fully explained his reasoning and we are satisfied that it is supported by substantial evidence.

Plaintiff objects on the ground that the Magistrate Judge misinterpreted his argument. He argues that the Magistrate Judge thought that Plaintiff was making the argument that the ALJ should not have recited both positive and negative facts in his decision. Even though the Magistrate Judge did consider that argument, he also addressed Plaintiff's argument regarding mere summarization of the record.

Plaintiff also raises a related point in his Objections that is somewhat convoluted and does not appear to be an Objection. In his Request for Review, Plaintiff speculated that the ALJ may have limited his credibility because the ALJ erroneously considered Plaintiff's prior substance abuse issues and medication side effects in evaluating Plaintiff's credibility. The Magistrate Judge found that the ALJ did not use Plaintiff's substance abuse issues or medication side effects in his evaluation of Plaintiff's credibility. We agree, and Plaintiff does not dispute that finding. However, Plaintiff, in his Objections, argues that, if the ALJ did not use Plaintiff's substance abuse issues or medication side effects in his evaluation of Plaintiff's credibility, then

14

the ALJ did not have any basis on which to limit Plaintiff's credibility. Plaintiff is incorrect because, as discussed above, the ALJ explained that objective medical findings and the state consultant's report supported the ALJ's decision to limit Plaintiff's credibility. It was not improper for the ALJ to limit Plaintiff's credibility based on objective medical findings. Plaintiff's third Objection will be overruled.

        3.        *Fourth Objection: Failure to Discuss GAF Scores*

Plaintiff argues that the ALJ failed to consider his low GAF scores. "A GAF score is a 'numerical summary of a [mental health] clinician's judgment of [an] individual's overall level of functioning.'" *Rivera v. Astrue*, 9 F. Supp. 3d 495, 504 (E.D. Pa. 2014) (quoting American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 2000)). A score of 50 or below indicates "serious symptoms." *Id.* As with all medical opinions from a treating source in a plaintiff's file, "[w]hen case evidence includes a GAF from a treating source and [the ALJ does] not give it controlling weight, [the ALJ] must provide good reasons in the personalized disability explanation or decision notice." *Nixon v. Colvin*, 190 F. Supp. 3d 444, 447 (E.D. Pa. 2016) (quoting AM-13066).[8] However, "even if the ALJ did not specifically mention an actual GAF number, [he or] she has provided 'good reasons' for discounting the GAF score if [he or] she adequately explained why [he or] she discounted the whole of the source's opinion." *Id.* at 448.

Here, Plaintiff's record includes at least five GAF scores from 2010-2012, none of which rise above 50. (R. 488, 637-40, 1062.) It is unclear whether these scores were assigned by

---

[8] The Commissioner correctly notes that the most recent edition of the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition ("DSM-5") does not include GAF ratings as part of mental health assessments. (*See* Social Security Administration Administrative Message-AM 10366, effective July 22, 2013, revised October 14, 2014 ("AM-13066"), Request for Review Ex. A.) However, the SSA has stated that "we will continue to receive and consider GAF in medical evidence." *Id.*

15

treating physicians or one-time examiners, but the three most recent scores, including one from February 2012, were assigned by mental health professionals at Reading Behavioral Health Center, where Plaintiff was treated by Dr. Pepen. The ALJ did not discuss any of these GAF scores. Plaintiff takes issue with this.

Magistrate Judge Strawbridge found that the ALJ was not required to discuss these scores because they predate Plaintiff's date of injury. We noted above that Plaintiff previously filed for disability in 2012, claiming an injury onset date in 2009. When that claim was denied on August 13, 2012, he re-filed for disability, claiming an injury onset date of August 14, 2012 solely for preclusion purposes. (Pl.'s Reply in Support of Request for Review 6.) The Magistrate Judge presumed that the ALJ who presided over Plaintiff's previous claim dealt with all the medical records predating the decision in that case. (R&R 19.) Plaintiff objects to the Magistrate Judge's focus on Plaintiff's date of injury, and argues that the scores are part of his medical history that should have been considered.

We agree with Magistrate Judge Strawbridge's conclusion that the ALJ was not required to specifically discuss Plaintiff's GAF scores. As a preliminary matter, we note that the date of the scores is not the most important factor in our analysis of this Objection. "When a claimant files successive applications, res judicata may be invoked by the agency to avoid entertaining each subsequent request based on the same issues." *Kaszer v. Massanari*, 40 F. App'x 686, 690 (3d Cir. 2002) (citing *Purter v. Heckler*, 771 F.2d 682, 691 (3d Cir. 1985)). Here, the record does not appear to contain an invocation of res judicata and, in fact, the ALJ expressly considered evidence from before August 14, 2012. (*See, e.g.*, R. 19 (discussing health records from May 2012); *see also Kaszer*, 40 F. App'x at 694 (finding that ALJ's review of evidence from prior application was consistent with *de facto* reconsideration of first application).). Therefore, the date that Plaintiff received the scores is not the most important factor in our

16

analysis. Rather, it was not improper for the ALJ to disregard Plaintiff's GAF scores because he had already addressed a number of sources, including the source of the most recent GAF scores, that came to the same conclusion. The ALJ noted statements in the record, including Plaintiff's and Dr. Pepen's statements, as well as statements by Plaintiff's therapist, indicating that Plaintiff's symptoms were severe. As discussed above, the ALJ identified each of these sources and thoroughly explained his reasoning for dismissing them. Accordingly, Plaintiff's fourth Objection will be overruled. *See Nixon*, 190 F. Supp. 3d at 447 (stating that the ALJ need not discuss GAF scores if they addressed the whole of the source that put forth the scores); *Fargnoli v. Halter*, 247 F.3d 34, 42 (3d Cir. 2001) (stating that ALJ need not discuss every document in record but must fulfill their duty to address substance of record under applicable laws and regulations).

### 4. *Fifth Objection: Failure to Discuss Lay Witness Statements*

Finally, Plaintiff objects to the Magistrate Judge's conclusion that the ALJ did not err when he failed to cite statements by Plaintiff's live-in girlfriend regarding Plaintiff's low level of functioning.

Plaintiff's girlfriend, Berenice Acevedo, completed a Third Party Function Report detailing fairly severe limitations that Plaintiff faces in everyday life because of his impairments. (R. 260-70.) The Commissioner notes, and Plaintiff does not dispute, that Acevedo also completed Plaintiff's own Function Report. (Def.'s Resp. to Request for Review 20-21.) As a result, the two reports state nearly identical limitations. (*Compare* R. 283-95 *with* R. 260-70.) Plaintiff's Function Report was cited extensively in the ALJ's discussions at Steps Three and Four, as detailed above. The ALJ failed to mention or discuss Acevedo's Third Party Function Report.

17

Magistrate Judge Strawbridge found that the ALJ did not err in failing to discuss Acevedo's Report because the ALJ had discussed the same statements as they appeared in Plaintiff's own Function Report. Plaintiff objects on the ground that the ALJ limited Plaintiff's credibility and assessed Plaintiff's Function Report in light of that limited credibility. Plaintiff argues that any report completed by Acevedo should not be assessed in terms of Plaintiff's credibility, but should be assessed in light of her own credibility as a lay witness.

We note that this argument appears to go hand in hand with Plaintiff's earlier argument that the ALJ may have improperly limited Plaintiff's credibility due to, for example, his substance abuse problems, such that Acevedo's statements should be assessed in a different context. However, we also noted above that the ALJ did not assess Plaintiff's credibility or his Function Report in terms of Plaintiff's substance abuse or any other reason that is personal to Plaintiff. Rather, the ALJ dismissed statements in Plaintiff's Function Report because they were inconsistent with other statements in the same report, a number of medical findings, and the state consultant's report. The finding that the statements in Plaintiff's own Function Report are limited by objective medical findings applies equally to statements made by Acevedo. Therefore, we agree with Magistrate Judge Strawbridge that the ALJ assessed the substance of Acevedo's Third Party Function Report, despite his failure to specifically name the report. Indeed, consistent with the principles described in our assessment of Plaintiff's GAF scores, an ALJ is not required to discuss "every tidbit of evidence included in the record," *Chun Soo Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004), so long as they address the substance of the medical record "consistent with [the ALJ's] responsibilities under the regulations and case law," *Fargnoli v. Halter*, 247 F.3d 34, 42 (3d Cir. 2001). Therefore, Plaintiff's fifth Objection will be overruled.

## IV. CONCLUSION

For these reasons, the Report and Recommendation will be approved and adopted, and Plaintiff's Request for Review will be denied.

An appropriate Order follows.

**BY THE COURT:**

_____
**R. BARCLAY SURRICK, J.**